UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESLI JOEL ALVAREZ,<br><br>                              Petitioner,<br><br>         vs.<br><br>M. KNOWLES, Warden,<br><br>                              Respondent. | CASE NO. EDCV 06-00931 MMM (RC)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

## I. INTRODUCTION

The court has reviewed the entire record in this action, the Report and Recommendation of Magistrate Judge Rosalyn M. Chapman ("R&R"),[1] and petitioner's objections thereto.[2] The court notes petitioner's contention that Judge Chapman inappropriately rejected his motion to stay the petition and hold the proceedings in abeyance while he returned to state court to exhaust his

---

[1] Final Report and Recommendation of United States Magistrate Judge ("R&R"), Docket No. 49 (Jan. 30, 2008).

[2] Petitioner's Objections to the Magistrate Judge's Report and Recommendations ("Pet.'s Objections"), Docket No. 21 (Apr. 11, 2008).

state court remedies with respect to claims 5 through 10.[3] The court also notes that petitioner's objection to Judge Chapman's conclusion that his amended petition is a mixed petition because he failed to exhaust claims 1 and 4 as federal claims.[4] The court addresses each of these objections in turn.

## II. DISCUSSION

### A. Petitioner's Objection to Judge Chapman's Denial of His Stay-and-Abey Motion

Prior to the passage of AEDPA, the Supreme Court held a district court faced with a "mixed petition," that is, a petition that presents some claims that have been exhausted in state court and some that have yet to be fully and finally adjudicated by a state court, should "dismiss [the] 'mixed petition[ ],' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1989).[5]

In *Rhines v. Weber*, 544 U.S. 269 (2005), the Supreme Court revisited the question of mixed petitions and considered whether a district court could stay, rather than dismiss, a mixed habeas petition. Specifically, the Court considered "whether a federal district court has discretion to stay [a] mixed petition to allow the petitioner to present his unexhausted claims to the state court in the first instance, and then to return to federal court for review of his perfected petition." *Id.*

---

[3] (1) Order Denying Petitioner's Hold Federal Habeas Petition in Abeyance and (2) Ruling that Petition Is a "Mixed" Petition and Requiring its Amendment ("Order"), Docket No. 3 (Aug. 24, 2006).

[4] Objections to the Report and Recommendation of Magistrate Judge ("Objections"), Docket No. 48 (Jan. 28, 2008).

[5] The passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") altered this bright line rule somewhat, stating that a federal court could not grant habeas relief "unless it appear[ed] that (A) the applicant has exhausted the remedies available in the courts of the State; *or* (B)(i) there is an absence of available State corrective process; *or* (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1) (emphasis added).

at 271. The Court held that a district court has discretion to stay under the "limited circumstances" in which there is "good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277.

The *Rhines* Court expressed concern that, as a result of the interplay between *Rose*'s total exhaustion/dismissal requirement and AEDPA's one year statute of limitations, petitioners with mixed petitions "run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 275. As the Ninth Circuit subsequently noted:

> "This risk arises because a petitioner could be faced with the choice of either striking his unexhausted claims and going forward with an exhausted petition or allowing the whole petition to be dismissed, without prejudice, as mixed. Under the the first option, once the other claims had been exhausted, a petitioner could return to federal court. If his original petition had already been decided on the merits, he could include the newly exhausted claims in a subsequent petition. The second petition, however, would be subject to the strict limitations AEDPA places on successive petitions. . . . The second option available under *Rose* is no more desirable for a petitioner, given the fact that AEDPA's one year statute of limitations will likely have run before a petitioner is able fully to exhaust state court remedies on the mixed petition and return to federal court." *Jackson v. Roe*, 425 F.3d 654, 660 (9th Cir. 2005).[6]

---

[6]Prior to the Supreme Court's decision in *Rhines*, the Ninth Circuit had held that district courts lacked power to stay mixed petitions, but possessed power to stay fully exhausted petitions. As a consequence, district courts developed a three-step procedure applicable to petitions that contained both exhausted and unexhausted claims:
> "The procedure included (1) allowing a petitioner to amend his petition to remove the unexhausted claims – as *Rose* indicated; (2) staying and holding in abeyance the amended, fully exhausted petition to allow a petitioner the opportunity to proceed to state court to exhaust the deleted claims; and (3) permitting the petitioner after completing exhaustion to amend his petition once more to reinsert the newly exhausted claims back into the original petition." *Jackson*, 425 F.3d at 658-59.

In *Kelly v. Small*, 315 F.3d 1063 (9th Cir. 2003), the Ninth Circuit required that a district court at least consider the option of holding the exhausted petition in abeyance, and stated that a stay

3

Given this dilemma potentially facing petitioners, the *Rhines* Court held that a district court has discretion to stay a mixed petition to allow a petitioner time to return to state court to present his unexhausted claims. It cautioned, however, that the stay-and-abey procedure must be applied consistently with AEDPA's twin purposes: "reduc[ing] delays in the execution of state and federal criminal sentences" and encouraging state "petitioners to seek relief from state courts in the first instance." *Rhines*, 544 U.S. at 276. To advance these purposes, *Rhines* held that the procedure was "particularly appropriate when an outright dismissal [would] render it unlikely or impossible for the petitioner to return to federal court within the one-year limitation period imposed by [AEDPA]." *Id.* at 1070.

Although *Rhines* did not abrogate this three-step procedure, it has been severely limited by the Supreme Court decision in *Mayle v. Felix*, 545 U.S. 644 (2005). There, the Court held that the Ninth Circuit's standard, which allowed amendment of the stayed petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id.* at 656. Instead, the Court held, an amendment of a habeas petition relates back to the original filing date for statute of limitations purposes only if it shares a "common core of operative facts" with the original claim. *Id.* at 664. As a result, since *Mayle*, the Ninth Circuit has noted that the *Kelly* procedure is "not only a more cumbersome procedure for petitioners, but also a riskier one." *Kelly v. Ryan*, 564 F.3d 1133, 1140 (9th Cir. 2009).

The Ninth Circuit previously held that "the district court was obligated to inform [a *pro se* petitioner] of his options with respect to [a] mixed habeas petition[ ]: to advise him that it would have the power to consider his stay motion[ ] only if he opted to proceed with his exhausted claims and dismiss the unexhausted claims." *Ford v. Hubbard*, 330 F.3d 1086, 1099 (9th Cir. 2003). The Ninth Circuit also held that the district court was obligated to inform the petitioner when AEDPA's statute of limitations period had run and caution that he would be barred from seeking habeas relief in federal court if he failed to amend his petition or dismissed it in order to exhaust the unexhausted claims. *Id.* at 1012. The Supreme Court reversed both holdings in *Pliler v. Ford*, 542 U.S. 225 (2004). In *Robbins v. Carey*, 481 F.3d 1143 (2007), the Ninth Circuit extended *Pliler v. Ford* beyond the two specific advisements it addressed, noting the Supreme Court's broad statement that district courts "have no obligation to act as counsel or paralegal to *pro se* litigants," and that "the Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." *Id.* at 1148 (quoting *Pliler*, 542 U.S. at 231). The *Robbins* court held that district courts are not required *sua sponte* to consider use of the *Kelly* stay-and-abey procedure, nor to issue warnings about use of the procedure. *Id.* at 1148-49.

In the present case, petitioner clearly attempted to invoke the *Rhines* stay-and-abey procedure, citing to *Rhines* multiple times throughout his motion and seeking to indicate that his case fit within the three-part *Rhines* standard. At no time did petitioner cite to *Kelly* or attempt to invoke a stay under *Kelly*, and per the decisions of *Pliler* and *Robbins*, Judge Chapman was not required to either inform petitioner of the *Kelly* stay or consider the availability of such a stay.

4

"should be available only in limited circumstances," and that it was

> "only appropriate when the district court determine[d] there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. . . . And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. . . .
> On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition." *Id*. at 278.

Although the Supreme Court required that petitioner demonstrate "good cause" for his failure to exhaust claims in state court, it has not amplified on that standard. The Ninth Circuit has provided some limited guidance. In *Jackson*, the Ninth Circuit considered an appeal from a district court decision finding that there were "no extraordinary circumstances that would warrant a stay." *Jackson*, 425 F.3d at 661 (emphasis omitted). The court held that *Rhines*' "good cause" standard does not require a showing that "extraordinary circumstances" prevented petitioner from exhausting all claims in state court. *Id*. at 661-62. Subsequently in *Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008), the Ninth Circuit held that a petitioner's contention that he was "'under the impression' that his counsel [had] included all of the issues raised before the California Court of Appeal in his petition before the California Supreme Court" did not constitute good cause under *Rhines* for staying his federal petition while he returned to state court to exhaust unexhausted claims. *Id*. at 1024 ("To accept that a petitioner's 'impression' that a claim had been included in an appellate brief constitutes 'good cause' would render stay-and-obey orders routine. Indeed, if the court was willing to stay mixed petitions based on a petitioner's lack of knowledge that a claim was not exhausted, virtually every habeas petitioner, at least those represented by counsel,

5

could argue that he *thought* his counsel had raised an unexhausted claim and secure a stay," quoting *Rhines*, 544 U.S. at 277 (emphasis original)).

Given *Rhines* and its Ninth Circuit progeny, it is apparent that "good cause" requires something less than a showing of extraordinary circumstances, but something more than a mistaken impression that counsel raised a claim before the state Supreme Court on petitioner's behalf. It is also clear that the "good cause" standard must be applied in a way that will advance AEDPA's dual purposes: "to reduce delays in executing state and federal criminal sentences and to streamline federal habeas proceedings by increasing a petitioner's incentive to exhaust all claims in state court." *Wooten*, 540 F.3d at 1024.

In this case, petitioner identified two grounds supporting his assertion that there was good cause to stay his petition while he returned to state court to exhaust unexhausted claims.[7] First, petitioner stated that he was representing himself.[8] Second, petitioner noted that the prison in which he was housed had been on lock-down for much of the time he had been there, and had only three computers and no books.[9]

In *Pittman v. Hense*, No. CV 09-5044-VAP (RNB), 2009 WL 4348428 (C.D. Cal. Dec. 1, 2009), Judge Virginia Phillips considered the effect of a petitioner's "lack of legal training, difficulty of obtaining facts while incarcerated, lack of resources, and although at times at liberty, attorney induced delays in the misinformation of available options." *Id*. at *3. She held that

> "if a *pro se* habeas petitioner's lack of legal training, difficulty in obtaining facts while incarcerated, lack of legal resources, and/or lack of knowledge of the law and

---

[7]Application to Hold Federal Habeas Petition in Abeyance Pending Exhaustion of Potentially Dispositive Claims in State Court ("Motion"), Docket No. 8 (Aug. 22, 2006).

[8]*Id*. at 8 ("Thus, petitioner in this case was left to his own devices in investigating any potential claims for relief that [were] outside the record. This included . . . any claims [for which] appointed appellate counsel may have rendered ineffective assistance by failing to raise a meritorious claim").

[9]*Id*. at 10. Petitioner did not elaborate on the length or scope of the lockdown. In his petitions in state court, petitioner asserted that the lockdowns "permit[ted] petitioner access to the yard for law library access, 2 days one week, then 3 days the next." (*Id.*, Exh. D.)

6

> his options were sufficient to satisfy *Rhines*'s 'good cause' requirement, the Supreme Court's observation in *Rhines* that 'stay and abeyance should be available only in limited circumstances' would be eviscerated because virtually every *pro se* habeas [petitioner] could show 'good cause' for his failure to present his unexhausted claims first to the state court." *Id.* at *3.

See also *Barno v. Hernandez*, No. 08cv2439 WQH (AJB), 2009 WL 2448435, *5 (S.D. Cal. Aug. 10, 2009) (holding that petitioner's allegations of lack of education and legal training, scarcity of relevant legal materials in the prison law library, limited access to the law library, difficultly obtaining facts and identifying witnesses while in custody, and lack of resources to retain legal assistance were insufficient to show good cause under *Rhines*); *Smith v. Giurbino*, No. 06cv700 IEG (CAB), 2008 WL 80983, *2 (S.D. Cal. Jan. 7, 2008) (holding that petitioner's alleged lack of legal knowledge, illness, and lack of knowledge of the facts were insufficient to show good cause under *Rhines*).

Judge Nora Manella of this district analogized the "good cause" standard governing stay-and-abey motions to the standard governing procedural default, where "a petitioner ordinarily must show that the default resulted from an objective factor external to the petitioner which cannot fairly be attributed to him or her." *Hernandez v. Sullivan*, 397 F.Supp.2d 1205, 1207 (C.D. Cal. 2005) (citing *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)). Applying this test, Judge Manella found that the failure of appellate counsel to raise an unexhausted claim on direct appeal did not establish "good cause" under *Rhines* because the failure "did nothing to prevent Petitioner from seeking state habeas relief for the unexhausted claims." *Id.* See also *Garcia v. Yates*, No. 08cv1993 LAB (WMc), WL 2755319, *3 (S.D. Cal. Apr. 10, 2009) (finding that petitioner's lack of evidence to support an allegation that a witness testified falsely and appellate counsel's failure to raise claims did not constitute good cause under the external factor test). A petitioner's inability to file due to lack of legal education has likewise been held not to constitute an objective factor external to petitioner that provides "good cause" for failure to exhaust. See also *Allen v. Scribner*, No. 07-CV-1746-H (AJB), 2008 WL 686808, *5 (S.D. Cal. Mar. 11, 2008) ("Allen's legal inexperience and his reliance on jailhouse lawyers do not constitute good cause for his failure to

exhaust his two new claims in state court. Petitioner's situation is certainly not the type of limited circumstance warranting the stay and abeyance of his federal Petition" (footnote omitted)).

Petitioner's limited access to the law library is also insufficient to establish good cause. Petitioner was convicted on September 19, 2003, and the California Supreme Court denied his petition for review on June 16, 2005. Petitioner then waited fifteen months before filing a petition for writ of habeas corpus in either state or federal court. Petitioner proffered no evidence in this court concerning the length of the lockdown in the prison facility where petitioner was housed or how severely his access to the library was curtailed. In his petition in Riverside Superior Court, however, he noted that the "institution ha[d] . . . inadequate yard access that . . . permit[ted] [him] access to the yard for law library access, 2 days one week, then 3 days the next." He also asserted that the prison was under "lock down [for] over three months [and] petitioner could only go to research 4 times a month."[10]

"[T]he Constitution does not guarantee a prisoner unlimited access to a law library." *Lindquist v. Idaho State Board of Corrections*, 776 F.2d 851, 858 (9th Cir. 1985). Prison officials are permitted to regulate the time, place, and manner in which prison library facilities are used. *Id.* In addition, at least one district court has held that limited library access amounting to one to two times per week for two years did not provide good cause for failure to exhaust. *Smith v. Gurbino*, No. 06cv700 IEG (CAB), 2008 WL 80983, *5 (S.D. Cal. Jan. 7, 2008). Here, petitioner's motion made nonspecific claims regarding the extent and duration of the limitations imposed on his ability to use the law library, which is not sufficient to demonstrate good cause. See *Barno*, 2009 WL 2448435 at *5 ("Petitioner has not shown how he had limited access to the library or what specific legal materials he needed that was lacking"). Petitioner's statements to the state court that the prison lockdown lasted only three months belies any finding that he had good cause for his failure to exhaust. See *Cortez v. Malfi*, No. CV 06-5196-DSF (RCF), 2008

---

[10]Coupled with petitioner's subsequent statement in his second state petition, filed October 9, 2006, that the prison was "still on lock down till this day," the pleadings suggest that the prison had begun lockdowns three to four months prior to October 2006. If this were true, petitioner cannot show good cause excusing his failure to exhaust between June 2005 and June 2006.

8

WL 4814689, *4 (C.D. Cal. Oct. 29, 2008) (petitioner's bare assertion that a prison lockdown had occurred "does not demonstrate how the prison lock-down prevented him from timely filing a petition", and the mere fact that there were lockdowns did not relieve petitioner of the burden of justifying the delay not attributable to the lockdown); *Allen v. Scribner*, No. 07-CV-1746-H (AJB), 2008 WL 686808, *5 (S.D. Cal. Mar. 11, 2008) ("Petitioner's vague allusions to lock-downs occurring at Calipatria State Prison fail to explain his delay, of over two and a half years, in attempting to exhaust these two new claims").

Nor do the objections, filed by petitioner's recently retained attorney, adequately show good cause for petitioner's failure to exhaust. The brief focuses almost exclusively on the fact that petitioner was not dilatory. Judge Chapman was not required to, and did not, consider whether petitioner was dilatory. Having concluded that petitioner had failed adequately to demonstrate good cause excusing his failure to exhaust, it was not necessary for Judge Chapman to reach the remaining *Rhines* factors. See *Wooten*, 540 F.3d at 1023 ("We hold that the district court did not abuse its discretion in concluding that Wooten did not have 'good cause' for failing to exhaust his cumulative error claim. As a result, we need not reach the other two factors in the *Rhines* test").

In conclusion, having reviewed Judge Chapman's report and recommendation de novo, and considered petitioner's objections, the court affirms Judge Chapman's denial of petitioner's stay-and-abey motion

**B. Petitioner's Objection to Judge Chapman's Finding that Claims 1 and 4 in the Amended Petition Were Not Exhausted**

For the first time in the conclusion of petitioner's objections to the R&R, he asserts that claims 1 and 4 "were in fact exhausted at the state level both in the State Court of Appeals as well as before the State Supreme Court."[11]

State remedies are not exhausted until petitioner's federal claims have been fairly presented to the state's highest court. See *Castille v. Peoples*, 489 U.S. 346, 350-51 (1989); *James v. Borg*, 24 F.3d 20, 24 (9th Cir.), cert. denied, 513 U.S. 935 (1994). A claim has not been fairly

---

[11]Objections at 12.

9

presented to the state court unless the petitioner has described in state court filings both the operative facts and the federal legal theory on which the claim is based. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999). It is not sufficient that petitioner have raised a state claim that has a similar factual basis as the federal claim later alleged in a federal habeas petition. Rather "[f]air presentation requires that the petitioner must present 'both the operative facts and the federal legal theory on which his claim is based' to the state court." *Koerner v. Grigas*, 328 F.3d 1039, 1046 (9th Cir. 2003) (quoting *Kelly*, 315 F.3d at 1066). Consequently, the "petitioner must have 'characterized the claims he raised in state proceedings *specifically* as federal claims.'" *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (quoting *Lyons v. Crawford*, 232 F.3d 666, 670 (2000)) (emphasis original). "Mere 'general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial,' do not establish exhaustion." *Id.* quoting *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999)). Rather, "the petitioner must have either referenced specific provisions of the federal constitution or cited to federal or state cases involving the legal standard for a federal constitutional violation." *Id.*

Reviewing petitioner's petition for review before the California Supreme Court, it is clear that claims 1 and 4 were not raised in that forum as federal claims. Claim 1, which alleges that the trial court erred in failing to instruct the jury that actual danger is not necessary in order to invoke the right of self defense, references only state law governing when a particular jury instruction must be given. Similarly, claim 4, which alleges juror misconduct, raises no federal constitutional claim. Indeed, in none of petitioner's state court petitions did he fairly present either claim 1 or claim 4 as a federal claim. Petitioner's objections to the R&R, moreover, do not identify any portion of the record demonstrating that the claims were exhausted in state court.

The court consequently concurs with Judge Chapman's conclusion that petitioner's amended petition was a mixed petition, and adopts her report and recommendation granting of respondent's motion to dismiss the petition on this basis.

### III.  CONCLUSION

In sum, having conducted a de novo review of Judge Chapman's Report and Recommendation, the court adopts the report in its entirety.

The clerk is directed to serve a copy of this order and the judgment on all counsel or parties of record.

DATED: February 16, 2010

                                               MARGARET M. MORROW
                                               UNITED STATES DISTRICT JUDGE